UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KEITH ALLEN ADCOX,                          )
                                            )
          Plaintiff,                        )
                                            )
                                            )
v.                                          )          No. 3:15-CV-125-PLR-CCS
                                            )
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
          Defendant.                        )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 16 & 17]. Keith Allen Adcox ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On August 17, 2011, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability which began August 1, 2011. [Tr. 114]. After his

application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr.

74]. On June 14, 2013, a hearing was held before the ALJ to review determination of Plaintiff's

claim. [Tr. 29-62]. During the hearing, the Plaintiff amended his allegations and requested a

closed period of disability beginning August 1, 2011 and ending December 1, 2012. [Tr. 13, 43,

46].  On October 10, 2013, the ALJ found that the Plaintiff was not disabled.  [Tr. 10-26].  The

Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ

became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this

Court on March 25, 2015, seeking judicial review of the Commissioner's final decision under

Section 205(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing

dispositive motions, and this matter is now ripe for adjudication.


I.      **ALJ FINDINGS**

The ALJ made the following findings:

> 1.   The claimant meets the insured status requirements of the
> Social Security Act through December 31, 2016.
>
> 2.   The claimant engaged in substantial gainful activity since
> August 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.  The claimant has the following severe impairments:  history of
> congenital imperforate anus, occupational asthma, reactive airway
> disease (RAD), and obesity (20 CFR 404.1520(c)).
>
> 4.   The claimant does not have an impairment or combination of
> impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR Part 303, Subpart P, Appendix 1
> (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) except the
> claimant can only occasionally climb ramps and stairs, ladders,
> ropes, and scaffolds.  He can occasionally balance, stoop, kneel,
> crouch, and crawl.  The claimant cannot work in extreme cold or
> heat, or wet and/or humid environments.  He should avoid all
> exposure to pulmonary irritants, such as fumes, odors, dust, or
> gases. The claimant is able to understand, remember, and carry out
> simple  and  detailed  instructions.     He  is  able  to  respond

2

appropriately to supervision, co-workers, and usual work situations. He can adapt to routine changes in the work setting, and maintain concentration and persistence for the above-mentioned tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 22, 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 15-22].


## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

3

or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); <u>see</u> 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.

> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

<u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. <u>Id.</u> The burden shifts to the Commissioner at step five. <u>Id.</u> At the fifth step, the Commissioner must prove that there

4

is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146

(1987)).


III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th

Cir. 2004).   Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981))

(internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice'

within which the Commissioner can act, without the fear of court interference." Buxton v.

Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.

5

1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


IV.     POSITIONS OF THE PARTIES

On appeal, the Plaintiff asserts two allegations of error committed by the ALJ.  First, the Plaintiff argues that the ALJ erroneously determined at step one of the sequential evaluation that because the Plaintiff had substantial gainful activity for part of 2011, he was not eligible to receive benefits that year.  [Doc. 15 at 9-11].  Second, the Plaintiff contends that the ALJ failed to give adequate consideration and controlling weight to the Plaintiff's treating physicians, including Rodney McMillian, M.D., Michael DiMeo, M.D., and Julio Solla, M.D.  [Id. at 11-21].

The Commissioner "acknowledges" that the ALJ found that the Plaintiff had substantial gainful activity for the entire year of 2011 despite not having worked after August of 2011, but argues that the ALJ's decision is supported by substantial evidence because the decision reflects consideration of all the evidence relating to the requested closed period at every subsequent step

6

of the sequential evaluation. [Doc. 17 at 14]. In this regard, the Commissioner submits that the evidence demonstrates that the Plaintiff stopped working during the closed period of time not because of a disabling impairment, but because he was terminated and simply could not find work until the following year, and that the medical evidence, as well as the Plaintiff's ability to perform a "heavy" exertional job following the closed period, fails to support the functional limitations alleged. [Id. at 14-18]. Additionally, the Commissioner maintains that the ALJ properly considered the treating physicians' opinions of record consistent with agency policy. [Id. at 18-22].

The Plaintiff filed a reply arguing that the Commissioner only offers *post hoc* rationalization for the proposition that the ALJ properly adjudicated the Plaintiff's case despite having found that the Plaintiff was not eligible for disability benefits until 2012. [Doc. 18 at 2]. Moreover, the Plaintiff submits that the Commissioner mischaracterizes the Plaintiff's ability to perform the exertional demands of his current jobs because although a vocational expert identified the job as "heavy" during the administrative hearing, the Plaintiff contends that he received accommodations in order to perform his job. [Id. at 3-4].

V. **ANALYSIS**

The Court will address the Plaintiff's allegations of error in turn.

A. **Substantial Gainful Activity at Step One**

This is a "closed period" case in which the Plaintiff alleges disability for a determinate amount of time. Specifically, the Plaintiff claims he was disabled from August 1, 2011 until December 1, 2012. [Tr. 43, 46]. The Sixth Circuit Court of Appeals has held that while "[t]he [Social Security Act] itself does not provide for a closed period of benefits . . . we think it clear

7

that such a closed period of benefits may be awarded." Myers v. Richardson, 471 F.2d 1265,

1267 (6th Cir. 1972). That is, a claimant may be found disabled for a finite period of time.

Program Operations Manual System ("POMS") § DI. 25510.001, https://secure.ssa.gov/apps10/

poms.nsf/lnx/0425510001 (last visited March 29, 2016). As long as the claimant meets the

twelve-month durational requirement set forth in 42 U.S.C. § 423(d)(1)(A), the claimant may

receive benefits from the time his disability commenced through the time his disability ended. Id.

In the disability determination, at step one, the ALJ concluded that although the

Plaintiff's alleged onset date was August 1, 2011, he did not become eligible for disability

benefits until 2012 because the Plaintiff's earned $43,395.59 in 2011, which constituted

substantial gainful activity.[1] As a result, the ALJ stated that the Plaintiff "cannot recover

disability benefits for 2011" and that "[t]he remainder of the decision discusses his impairments

and limitations as of 2012." [Tr. 15].

The Plaintiff argues that the ALJ incorrectly concluded that the Plaintiff's earnings for

part of 2011, which amounted to substantial gainful activity, disqualified him for collecting

disability benefits for the remainder of that year. [Doc. 15 at 9]. The Plaintiff submits that

pursuant to the Social Security Act, a period of disability begins on the date a claimant stopped

working at the substantial gainful activity level, which was August 1, 2011 in this case. [Id.].

The Plaintiff compares his earnings in 2010, which grossed $79,937.36, with his 2011 earnings,

which grossed $43,295.59, and contends that "[e]arning roughly half of the previous year's

income is evidence of work for approximately half of the previous year." [Id. at 10].

While not explicitly conceding that the ALJ committed error, the Commissioner agrees

---

[1] "The Social Security Act provides that an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. 20 C.F.R. § 404.1572(a)-(b).

8

that the Plaintiff's 2011 earnings indeed indicate that the he did not work after August 2011 and that the Plaintiff is further correct in that agency policy dictates that "earnings achieved during part of a year should be averaged only during the period actually worked." [Doc. 17 at 13 (citing Soc. Sec. Rul. 83-35, 1983 WL 31257, at *1 (Jan. 1, 1983)]. Despite these concessions, the Commissioner argues that the ALJ's decision is supported by substantial evidence because the ALJ considered all of the evidence related to the requested closed period of time in finding that the Plaintiff was not disabled. [Id. at 14-17].

The Court agrees with the Plaintiff that the ALJ erroneously concluded that the Plaintiff was not eligible for disability benefits in 2011 because his wages for part of that year constituted substantial gainful activity. "A period of disability shall begin *on the day the disability began*." 42 U.S.C. § 416(i)(2)(C)(i) (emphasis added). In other words, the 12-month "duration requirement period begins at the time that a person is continuously unable to engage in substantial gainful activity (SGA), and has not engaged in SGA, because of a medically determinable impairment(s)." POMS § DI 25510.01. Here, the parties, and indeed the ALJ, all agree that the Plaintiff did not engage in substantial gainful activity after August 2011, the month the Plaintiff alleges he became disabled. Therefore, while the Plaintiff's earning records show that he earned $43,295.59 in 2011, the Plaintiff did not engaged in substantial gainful activity beyond August 2011 and was thus eligible to assert an entitlement to benefits from that point forward until the closed period ended on December 1, 2012. Accordingly, the Court finds that the ALJ erred in concluding that the disability decision should be limited the Plaintiff's "impairments and limitations as of 2012" [Tr. 15].

Having found that the ALJ erred, the Court turns to whether the error was a reversible one. An ALJ's violation of the Social Security Administration's procedural rules is harmless and

9

will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, the ALJ's procedural error is harmless if her ultimate decision was supported by substantial evidence and the error did not deprive the Plaintiff of an important benefit or safeguard. See id. at 547.

The Plaintiff argues that the ALJ's application of the incorrect legal standard at step one, and a denial of a disability benefits for 2011, was reversible error because it affected a substantial right. [Doc. 15 at 10]. Although the Commissioner concedes that the Plaintiff did not work after August 2011, the Commissioner contends that the ALJ did not commit reversible error because she considered all of the evidence, including the medical evidence that related back to August 2011, at the remaining sequential steps. [Doc. 14 at 17]. The Plaintiff argues that the Commissioner's position amounts to *post hoc* rationalization and does not overcome the ALJ's express ruling that the Plaintiff was not eligible to recover benefits for 2011. [Doc. 18 at 2].

As an initial matter, the Court finds that the Commissioner's position does not amount to the type of impermissible *post hoc* rationalization that the Court is prohibited from considering. See Hyatt Corp. v. N.L.R.B., 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's *post hoc* rationalization for an agency's decision where no such explanation was enunciated in the decision and holding that "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order") (citations omitted). While the Plaintiff is generally correct that agency action must be upheld on the basis articulated by the agency itself, our appellate court has explained that the Commissioner may direct the courts to other evidence in the record that would support the conclusion that an error committed by the ALJ is harmless without it amounting to a request that the Court impermissibly speculate on the basis of the ALJ's decision:

10

While agency decisions must be sustained, if at all, on their own reasoning, . . . this principle does not mechanically compel reversal when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached. Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture . . . .

Berryhill v. Shalala, No. 92-5876, 1993 WL 361792, at *7 (6th Cir. 1993) (quoting with approval Kurzon v. United States Postal Serv., 539 F.2d 788, 796 (1st Cir. 1976) (internal quotations omitted); see also Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 159 (6th Cir. 2009) (declining to address the claimant's argument "that the district court impermissibly used post hoc rationalizations, substituting its own 'revised rationale' to uphold the decision of the Commissioner[,] [b]ecause a review of the record clearly shows that the ALJ's decision is supported by substantial evidence").

Here, the ALJ's decision discusses the evidence of record relating back to 2011, and even prior to that. For example, the ALJ considered and weighed a consultative examination performed by Jeffrey Summers, M.D., in December 2011. [Tr. 18]. The ALJ discussed 2011 records from treating physician Dr. DiMeo and non-treating, examining physician Clary Foote, M.D., regarding the Plaintiff's pulmonary impairments, and an opinion letter authored by treating physician Dr. McMillian, dated September 8, 2011, that opined on the Plaintiff's ability to find work given his impairments. [Tr. 18-20]. The ALJ also observed that the Plaintiff had undergone two rectal prolapse surgeries, the last being in 2009, with treating physician Dr. Solla, and that the Plaintiff had not received any further treatment for this impairment since his surgery in 2009. [Tr. 19]. Moreover, the ALJ explicitly found that the Plaintiff had not been under a disability since August 1, 2011. [Tr. 22].

11

Having reviewed the medical evidence of record, it does not appear to the Court that had the ALJ instead concluded that the Plaintiff was eligible for disability benefits for the entire closed period as requested, that the ALJ's discussion or consideration of the evidence would have, or should have, been different. Indeed, the Plaintiff makes no showing of what evidence the ALJ neglected to consider or discuss, or how such neglected evidence would have changed the analysis or ultimate outcome of the ALJ's decision. As such, the Court is left with no "substantial doubt" that the outcome, or the decision's analysis, would have been different had the ALJ found at step one that the Plaintiff became eligible for disability benefits beginning August 2011. If the Court remanded the case to the ALJ on this basis, the ALJ would be charged with considering the same evidence and timeframe that her decision already addresses. "When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" Kobetic v. Comm'r of Soc. Sec., 114 F. App'x 171, 173 (6th Cir. Nov. 4, 2004) (quoting NLRB v. Wyman–Gordon Co., 394 U.S. 759, 766 n.6 (1969)).

Accordingly, while the ALJ erred at step one, the Court finds that the Plaintiff has not "been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." See Wilson, 378 F.3d at 546-47. Therefore, the Court finds the Plaintiff's allegation of error in this regard is without merit.

### B.     Treating Physician Opinions

The Plaintiff also raises a number of errors he contends that the ALJ committed in regard to the opinions rendered by treating physicians Drs. Solla, DiMeo, and McMillan. [Doc. 15 at 12-23].

12

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. Id. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Court will address each treating physicians' opinion separately and the errors alleged.

### 1. Dr. Solla

The Plaintiff established treatment with Dr. Solla in 2003 when the Plaintiff presented with a history of rectal pain and associated symptoms and conditions. [Tr. 311]. In addition to

13

receiving multiple colonoscopies during the course of routine treatment with Dr. Solla, which continued until at least November 10, 2011 [see Tr. 307-31], the Plaintiff underwent surgery on August 4, 2003, and again on September 18, 2009, to obtain relief from rectal mucosal prolapse. [Tr. 323, 329]. The record contains a June 4, 2014 work "Excuse Slip" from Dr. Solla that states, due to "injury" and "illness," the Plaintiff "is not allowed to lift more than 10 pounds." [Tr. 531]. The note states that the restriction is from June 4, 2013 until "further notice." [Id.].

In the disability determination, the ALJ assigned "little weight" to Dr. Solla's lifting restriction, finding that the Plaintiff "actually engages in physical activities that are far more strenuous than lifting ten pounds." [Tr. 20]. The ALJ also discredited the opinion by pointing to testimony from a vocational expert, who had classified the Plaintiff's current job as a maintenance tech for a dialysis company as "heavy" in accordance with the Dictionary of Occupational Titles [Tr. 39, 52-53], as evidence that the Plaintiff was not as limited in his ability to lift. [Tr. 20]. The ALJ concluded that the lack of corroborating treatment notes, as well as the Plaintiff's heavy level job and performance of activities, undermined the credibility of Dr. Solla's opinion. [Id.].

The Plaintiff argues that Dr. Solla's opinion should have been given greater weight because it is not inconsistent with other substantial evidence in the record. [Doc. 15 at 12]. The Plaintiff asserts that the ALJ fails to state with particularity or citation to the record what "far more strenuous activities" the ALJ is referring to and that the vocational expert's testimony classifying the Plaintiff's current job as "heavy" is how the Dictionary of Occupational Titles defines the Plaintiff's job, not how the Plaintiff himself actually performs it. [Id. at 13]. The Court, however, need not reach the merits of the Plaintiff's argument because the Court finds that Dr. Solla's opinion is deficient and not entitled to controlling weight for other reasons.

14

Specifically, Dr. Solla opined that the lifting restriction did not begin until June 4, 2013, thereby making the opinion of little probative value since the Plaintiff is seeking a close period of disability that ended on December 1, 2012. See Roby v. Comm'r of Soc. Sec., 48 F. App'x 532, 537 (6th Cir. 2002) (rejecting the alleged relevance of the claimant's chiropractic records, in pertinent part, because the records consisted of evidence pertaining to the claimant's condition *after* the closed period had ended and the claimant had returned to work). In other words, for Dr. Solla's opinion to be relevant as to what the Plaintiff could and could not do during the closed period, there must be some evidence that the limitation opined in 2013 relates back to the close period. Cf. Brazzell v. Astrue, No. CIVA 5:09CV92-J, 2009 WL 5217361, at *3 (W.D. Ky. Dec. 30, 2009) (holding that "the ALJ's RFC finding for the closed period was not supported by any probative medical opinion" where the opinion relied on by the ALJ, which concluded that the claimant could perform light work, postdated the closed period). The Court finds no such evidence exists. The note specifically states that the lifting restriction began on June 4, 2013 – six months after the Plaintiff's closed period ended.

Moreover, Dr. Solla's treatment notes do not indicate any concerns, limitations, or restrictions in regard to the Plaintiff's ability to perform functional activities prior to June 4, 2013, such that the Court could reasonably interpret the note as relating back to the relevant time period. For example, following the Plaintiff's most recent rectal surgery in 2009, Dr. Solla noted on October 13, 2009, that the Plaintiff appeared "well healed" and could "return to full duty with lifting" on November 9, 2009. [Tr. 314]. In addition, treatment notes from the Plaintiff's last visit of record with Dr. Solla, in which a colonoscopy was performed, relay that the Plaintiff's colon and rectum was within normal limits. [Tr. 322]. Aside from interpreting the note at face value which suggests that the lifting restriction does not relate back, these treatment notes, as

15

well as the lack of treatment received from Dr. Solla after November 10, 2011 until the June 4, 2013 note was written, suggests that the Plaintiff's condition as opined on June 4, 2013, had no bearing on the Plaintiff's functional limitations during the closed period.

Accordingly, even assuming, *arguendo*, that the ALJ failed to properly apply the treating physician rule to Dr. Solla's opinion, the Court finds that the error would be harmless because the post-dated opinion could not have been credited as controlling evidence in this case. See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (holding that a violation of the "good reason" rule can be deemed "harmless error" if "a treating source's opinion is so patently deficient that the Commissioner could not possible credit it") (citation omitted). Therefore, the Court finds the Plaintiff's contention as to Dr. Solla is without merit.

### 2. *Dr. DiMeo*

Dr. DiMeo provided pulmonary treatment to the Plaintiff beginning December 15, 2010, for reactive airway disease, allergic rhinitis, and pulmonary nodules – conditions that likely resulted from exposure to industrial chemicals and irritants from a previous long-term job. [Tr. 259-60]. In addition to treatment with medication and inhalers, Dr. DiMeo recommended that the Plaintiff avoid respiratory irritants, whether at home or at the workplace, so as to not exacerbate his asthma. [Id.]. As the Plaintiff continued treatment through December 12, 2012, Dr. DiMeo routinely noted that the Plaintiff was doing fairly well as along as he took his medication and avoided respiratory irritants. [Tr. 247-60, 518-23]. On several occasions, however, the Plaintiff reported a waxing and waning of symptoms that included lightheadedness, dizziness, and shortness of breath. [Tr. 247, 520-522]. Dr. DiMeo attributed these symptoms to the weather or exposure to chemicals. [Id.].

On August 15, 2012, the Plaintiff's last appointment before his closed period ended, he

complained of shortness of breath, which Dr. DiMeo noted was likely due to the humid weather. [Tr. 520-521]. Dr. DiMeo opined "that at present[,] [the Plaintiff's] asthma is placing him at a rather significant amount of disability working given the variability in his dyspnea, etc. Will rediscuss next visit." [Tr. 521]. At the Plaintiff's follow-up appointment on December 12, 2012, almost two weeks after the Plaintiff's closed period had ended, the Plaintiff reported he was doing well "as long as I take my medicines," which appeared to reduce sensitivity to respiratory stimuli. [Tr. 518]. Dr. DiMeo noted that the Plaintiff's asthma "appears under better control" and his restrictive airway disease "appears much less of an issue." [Tr. 519]. Dr. DiMeo "encouraged" the Plaintiff to use a respirator, not just a mask, whenever he was around chemicals. [Id.].

The ALJ observed in the disability determination that Dr. DiMeo's 2011 treatment records revealed that the Plaintiff's reactive airway disease was reasonably stable and that pulmonary function tests did not show significant progression of the disease. [Tr. 18]. In particular, the ALJ noted that the Plaintiff's forced vital capacity ("FVC") was 3.9 or 79% of predicted, and he had a forced expiratory volume in one second ("FEV1") of 3.48 or 85% of predicted.[2] [Id.]. While the Plaintiff's FEV1 value had dropped in May 2013, the ALJ observed that Dr. DiMeo nonetheless noted that the Plaintiff continued to do fairly well. [Id.]. The ALJ apparently treated Dr. DiMeo's August 15, 2012 statement that the Plaintiff's asthma placed him at a "rather significant amount of disability" as a "medical opinion" and assigned the statement "little weight." [Tr. 20]. The ALJ explained that the statement was inconsistent with the

---

[2] "The FVC is the total volume of air that can be exhaled with maximum effort following maximum inspiration. The FEV1 is the volume of air that can be exhaled with maximum effort during the first second, i.e. the volume exhaled during the first second of the FVC." Kraushaar v. Comm'r of Soc. Sec., No. 1:11 CV 2252, 2012 WL 6953381, at *11 (N.D. Ohio Nov. 26, 2012) adopted by No. 1:11-CV-2252, 2013 WL 331121 (N.D. Ohio Jan. 29, 2013) (citing Social Security Disability Tests, Vol. 1, § 3.22 at 3–50 (2011)).

Plaintiff's actual work activity, and treatment records from Dr. Foote, who provided a respiratory impairment assessment on October 31, 2011. [Id.]. Dr. Foote had opined that a pulmonary function test performed on the Plaintiff showed only mild restriction and that the Plaintiff's chest was clinically clear, but that the Plaintiff's "symptoms could be much worse if he is in a position where he is exposed to any offending triggering factors." [Tr. 503, 505]. The ALJ found that Dr. Foote's assessment contradicted Dr. DiMeo's statement that the Plaintiff's asthma placed him at a "rather significant amount of disability" and also found "that the statement was [] vague and not useful in determining the claimant's residual functional capacity." [Tr. 20].

The Plaintiff argues that the ALJ did not give good reason for discounting Dr. DiMeo's opinion, arguing that Dr. Foote's assessment is not inconsistent with Dr. DiMeo's opinion because the assessment explains that the Plaintiff's symptoms could be significantly worse if exposed to respiratory irritants. [Doc. 15 at 14].

In reviewing the ALJ's treatment of Dr. DiMeo's statement, the Court questions whether the statement amounts to a "medical opinion" that must be weighed in accordance with the treating physician rule. A "medical opinion" is a statement from physician or psychologist "that reflect judgments about the nature and severity of" a claimant's impairments, including symptoms, diagnosis, and restrictions. 20 C.F.R. § 404.1527(a)(2). Statements that a claimant is "disabled" or "unable to work," however, do not constitute "medical opinions," and, instead, are findings on issues reserved to the Commissioner. § 404.1527(d)(1). Accordingly, such statements are not given any special significance. § 404.1527(d)(3).

Here, Dr. DiMeo's statement appears to opine on the issue of whether the Plaintiff's asthma is so severe that it renders him "disabled" or "unable to work." Therefore, the Court has some reservations reviewing the ALJ's treatment of the statement within the confines of the

18

treating physician rule. See Dunlap v. Comm'r of Soc. Sec., 509 F. App' x 472, 474-76 (6th Cir. 2012) (declining to find a treating physician's statement that the claimant "has severe low back pain and due to his pain is unable to work" qualified as a "medial opinion" subject to the treating physician rule). Even so, the Court finds that Dr. DiMeo's conclusory statement was not due any greater degree of deference than that assigned by the ALJ, and that the ALJ's observation that the statement was vague and unhelpful satisfied the "good reason" rule.

Specifically, the statement fails to qualify the degree of functional limitation or restriction the Plaintiff's asthma has on his ability to perform work related activities. If, on the one hand, Dr. DiMeo meant that that Plaintiff's asthma is so severe he cannot work, the statement impermissibly opines on an issue only the Commissioner can decide. If, on the other hand, Dr. DiMeo meant that the Plaintiff's asthma is so severe that it restricts his ability to perform certain work activities, the statement fails to qualify those restriction in terms of what the Plaintiff can and cannot do. What is clear from Dr. DiMeo's treatment notes, as well as Dr. Foote's assessment, is that the Plaintiff should not be around chemicals and other known respiratory irritants, at least not without a respirator. The ALJ's RFC determination, however, adheres to these recommendations. The ALJ found that the Plaintiff "should avoid *all* exposure to pulmonary irritants, such as fumes, odors, dust or gases." [Tr. 17] (emphasis added).

Accordingly, the Court find's the Plaintiff's assignment of error as to Dr. DiMeo unavailing.

### 3. Dr. McMillian

The Plaintiff has a long-term treating relationship with Dr. McMillian which began in 1993. [Tr. 434]. Over the years, Dr. McMillian has provided general care to the Plaintiff as his primary care physician. [Tr. 359-92, 410-34]. Of relevance to the Plaintiff's application for

19

disability benefits, the record contains four separate opinions authored by Dr. McMillian.

First, the record contains a letter, dated September 8, 2011, in which Dr. McMillian opined that the Plaintiff suffered from pulmonary fibrosis and extreme rectal prolapse that made it "very difficult for him to find suitable employment that can environmentally provide the conditions he needs to work." [Tr. 917].

A second letter was written on October 29, 2012, in which Dr. McMillian stated that the Plaintiff is unable to sit for prolonged periods of times before his rectal prolapse becomes symptomatic. [Tr. 506]. Contemporaneous with this letter, Dr. McMillian completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," wherein he responded to a variety of multiple-choice questions regarding the Plaintiff's functional limitations. [Tr. 507-12]. Therein, Dr. McMillian opined that the Plaintiff could only lift or carry up to 10 pounds occasionally; could walk for one hour, stand for three hours, and sit for two hours in an eight-hour workday, but at one time without interruption could only sit for one hour, stand for two hours, and walk for 20 minutes; could frequently reach with both hands but could only finger, feel, and push or pull with his left hand on an occasional basis; could occasionally use foot controls with his right foot and frequently use foot controls with his left foot; and could occasionally climb stairs, ramps, ladders, or scaffolds, and crawl, but could never balance, stoop, kneel, or crouch. [Tr. 508-10]. Additionally, the Plaintiff could never be around unprotected heights, moving mechanical parts, operate a motor vehicle, or be exposed to pulmonary irritants; but he could occasionally be exposed to humidity and wetness, extreme cold or heat, and vibrations. [Tr. 511].

Finally, Dr. McMillian completed a second medical source statement on June 13, 2013, in which he opined that the Plaintiff suffered from rectal prolapse, a learning disability, and

20

asthma. [Tr. 532-36]. Dr. McMillian found that the Plaintiff could only lift or carry up to five pounds occasionally; could stand, sit, or walk for two hours in an eight-hour workday; could stoop, crouch, and bend, but never climb; and would need to take 20-minute hourly breaks to sit down. [Tr. 533-34]. Dr. McMillian further opined that the Plaintiff suffered from depression that occasionally interfered with his ability to pay attention and concentrate. [Tr. 534-35]. Based upon the Plaintiff's physical and mental limitations, Dr. McMillian concluded that the Plaintiff would be "off task" more than 30% of the time. [Tr. 535]. Dr. McMillian submitted that his findings were based upon physical examinations and office treatment notes. [Tr. 536].

After summarizing each opinion offered by Dr. McMillian, the ALJ assigned "little weight" to the opinions for multiple reasons. [Tr. 19-20]. First, the ALJ found that Dr. McMillian's September 8, 2011 letter was not a "medical opinion" because it opined on whether the Plaintiff was employable. [Tr. 19]. Second, the ALJ found that the Plaintiff's ability to find a job belied the limitations assessed. [Id.]. Third, the opinions were found to be inconsistent with Dr. McMillian's treatments notes, which the ALJ explained only documented mild limitations and that the Plaintiff's breathing condition was stable with medication. [Id.]. Fourth, the ALJ explained that parts of the opinions which amounted to statements that the Plaintiff was "disabled" or "unable to work" were not "medical opinions." [Tr. 19-20]. Fifth, the ALJ noted that Dr. McMillan did not indicate what environmental needs the Plaintiff required, presumably in regard to the September 8, 2011 letter. [Tr. 20]. Sixth, Dr. McMillian's second medial source statement, which expressed opinions regarding the Plaintiff's mental limitations, were found to be outside of the physician's area of expertise and also inconsistent with the Plaintiff's work activity. [Id.]. Furthermore, the ALJ observed that someone other than Dr. McMillian may have completed the medical source statement given the differing in handwriting on the form. [Id.].

21

Finally, the ALJ submitted that Dr. McMillian sees the Plaintiff only once a year and has never treated the Plaintiff for mental health issues. [Id.].

The Plaintiff contends that Dr. McMillian's opinions meet the first prong of the "controlling weight" test, *i.e.*, that the opinions are supported by medically acceptable clinical and laboratory diagnostics techniques, because Dr. McMillian provided pre and post-op care to the Plaintiff in regard to his rectal prolapse condition. [Doc. 15 at 12]. The Court disagrees. While Dr. McMillian has been the Plaintiff's long-time treating physician, the record demonstrates that the Plaintiff was only seen on three separate occasions following his 2009 rectal prolapse surgery. [Tr. 362-63]. In fact, the record contains no treatment in 2009, prior to or following the Plaintiff's surgery, and only two appointments in 2010, at which time the Plaintiff was treated for head congestion and elbow tendonitis. [Tr. 363]. When the Plaintiff presented at his last appointment of record on August 12 , 2011,[3] which is the only treatment note during the relevant time period at issue, the Plaintiff complained that the chemicals at work bothered him and that he had trouble lifting because of his rectal prolapse surgery. [Tr. 326]. Dr. McMillian noted that the Plaintiff was "doing well" and his "chest is clear," but that he was having a hard time lifting greater than five pounds and that his sinuses were sensitive to dust and other solvents. [Id.]. Well this treatment note is at least consistent with the Plaintiff's disabling allegations, it can hardly be viewed as providing the well-supported documentation of medially acceptable clinical and laboratory diagnostic techniques that explain or champion Dr. McMillian's opinions, particularly where three of the four opinions at issue were authored one to two years after the Plaintiff's last office visit of record.

---

[3] The Court further observes that the record is void of any contemporaneous treatment notes, or any treatment after August 12, 2011 for that matter, that offer some explanation or support for the limitations opined in Dr. McMillian's October 23, 2012 letter and medical source statement, as well as his June 6, 2013 medical source statement.

The Court also disagrees with the Plaintiff's contention that Dr. McMillian's opinions are consistent with other substantial evidence in the record, thereby meeting the second prong of the "controlling weight" test. [See Doc. 15 at 14-15]. As discussed above, and observed by the ALJ [Tr. 18-19], during the relevant time period at issue, Dr. Solla assessed no limitations following the Plaintiff's 2009 rectal prolapse surgery, Dr. DiMeo routinely noted that the Plaintiff's pulmonary condition was under control as along as he took his medication and avoided respiratory irritants, and Dr. Foote assessed only mild reactive airway disease. In addition, less restrictive physical and mental limitations were opined by consultative examiners Jeffery Summers, M.D. [393-404], and Tracy Allred, Ed.D. [Tr. 405-409], whose opinions were assigned "great weight" by the ALJ [Tr. 19].

Therefore, the Court finds that Dr. McMillian's opinions were not entitled to controlling weight. See Potter v. Astrue, No. 3:09CV0169, 2010 WL 2679754, at *7 (S.D. Ohio June 2, 2010) adopted by No. 3:09-CV-169, 2010 WL 2679753 (S.D. Ohio July 6, 2010) (explaining that if either prong of the "controlling weight" test is not met, "the treating source's opinion is not deferentially due controlling weight") (citing Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007)).

The Court's analysis, therefore, turns to whether the ALJ provided good reasons for assigning the opinions "little weight." See 20 C.F.R. § 404.1527(c)(2). The Court finds in the affirmative. At the outset, the Court notes that the September 8, 2011 letter is not a "medical opinion" within the meaning of 20 C.F.R. § 404.1527(b), see supra p. 18, because the letter opines on whether the Plaintiff is able to work. Furthermore, the letter does not explain the impact the Plaintiff's impairments have on his functional limitations, particularly the "environmental" restrictions Dr. McMillian alludes to. Therefore, the Court finds that the ALJ's

23

first, fourth, and fifth[4] reasons were appropriate findings for rejecting Dr. McMillian's September 8, 2011 letter.

With regard to the remaining reasons cited by the ALJ, the Court finds that these too amount to good reasons for assigning "little weight" to the remaining three opinions offered by Dr. McMillian. As to the second reason cited by the ALJ, that the Plaintiff's ability to find work belied the limitations assessed by Dr. McMillian, the Plaintiff argues that this is not a valid reasons because he testified that he was unable to lift more than 10 pounds, had to take breaks every hour, and is off task throughout the workday. [Doc. 15 at 17]. Under the particular facts of this case, however, the Court finds that it was not improper for the ALJ to consider the Plaintiff's work immediately after the closed the period had ended. See Lee v. Comm'r Soc. Sec., 248 F. App'x 458, 461 (3d Cir. 2007) ("We conclude that her return to the workforce was appropriately considered by the ALJ in resolving Lee's application for a closed period of disability from December of 1996 to July of 2002, the month immediately preceding her return to the workforce as an airport security screener."); Eaton v. Comm'r of Soc. Sec., No. 1:10-CV-714, 2011 WL 2601503, at *4 (W.D. Mich. June 6, 2011), adopted by No. 1:10-CV-714, 2011 WL 2601514 (W.D. Mich. July 1, 2011) ("To the extent that plaintiff contends that the ALJ improperly reviewed his work history before and after the closed period, such a claim is without merit. A claimant's work record is a factor to be considered when evaluating a claimant's credibility as well as the intensity and persistence of symptoms."). Here, the Plaintiff's closed

---

[4] As to this reason, that Dr. McMillian does not indicate what environment needs the Plaintiff requires, the Plaintiff argues that this finding triggered the ALJ's duty under Social Security Ruling 96-5p to recontact Dr. McMillian to clarify what he meant. [Doc. 15 at 19]. The Court observes that "[g]enerally, an Administrative Law Judge need recontact a medical source only if the evidence received from that source is 'inadequate' for a disability determination," DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 416 (6th Cir.2006) and that "[a]bsent a gap in the record, the ALJ has no duty to recontact the physician," Starkey v. Comm'r of Soc. Sec., No. 1:06–CV–693, 2008 WL 828861, 4 (W.D. Mich. Mar. 26, 2008). Here, the Court finds that the ALJ was not required to recontact Dr. McMillian because the letter was not a "medical opinion."

24

period ended not because his impairments had improved, but because he was simply able to find a job he could perform despite his impairments. Indeed, the Plaintiff testified that during the closed period he continued to look for work but that no one would hire him because of his health. [Tr. 40, 44]. Therefore, the Court finds that the ALJ did not err in considering the Plaintiff return to work immediately after his closed period had ended. See Patton v. Comm'r of Soc. Sec., No. CIV.A. 10-13314, 2011 WL 4576977, at *6 (E.D. Mich. July 29, 2011) adopted by No. 10-13314, 2011 WL 4577250 (E.D. Mich. Sept. 30, 2011) (rejecting the claimant's argument that the ALJ impermissibly consider the fact that she resumed her job where treatment notes did not suggest that she returned to work because her condition had improved).

The Plaintiff also contends that the third reason cited by the ALJ, that Dr. McMillian's opinions are inconsistent with his treatment notes which document only mild limitations and stable breathing, is uncorroborated by Dr. McMillian's treatment records. [Doc. 15 at 18]. The Court agrees but finds the error is harmless. The only treatment note of record during the closed period, as discussed above, is August 12, 2011, in which Dr. McMillian observed that the Plaintiff was doing well and his chest was clear but that his pulmonary and rectal condition also made it difficult to find suitable work. [Tr. 362]. While it is unclear what other treatment notes the ALJ was referring to, the Court observes that the error was harmless because the ALJ gave numerous other good reasons for assigning the opinions little weight.

The Plaintiff also argues that the ALJ's sixth reason, that Dr. McMillian's opinion on the Plaintiff's mental limitations was outside of the physician's expertise, is not good reason for assigning little weight to the entirety of the June 6, 2013 medical source statement. [Doc. 15 at 19]. The Court agrees with this contention, but notes that it is only one of the (appropriate) reasons cited by the ALJ and was not solely relied upon or summarily used in discounting the

25

opinion in its entirety.

Finally, as to the seventh reason cited by the ALJ for assigning little weight to Dr. McMillian's opinions, the lack of frequency with which the Plaintiff received treatment from Dr. McMillian, the Plaintiff similarly argues that this was but one factor the ALJ is charged with considering and that Dr. McMillian had a "longitude view" of the Plaintiff's functional capacity given the lengthy treating relationship. [Doc. 15 at 20]. However, this Court has repeatedly noted throughout this decision that despite the long-term treating relationship, Dr. McMillian did not provide any treatment to the Plaintiff during or around the relevant time period other than a single office visit. Therefore, Dr. McMillian's record falls short of providing a "longitudinal view" into the Plaintiff's functional limitations.

While the frequency of treatment is indeed only one factor the ALJ is charged with considering, the Court finds that the ALJ's observation that the Plaintiff was only seen yearly by Dr. McMillian speaks to the length of treatment, nature and extent of the treating relationship, as well as the supportability of the limitations assessed. See 20 C.F.R. § 404.1527(c)(2)-(3). Specifically, the limitations expressed in Dr. McMillian's opinions are neither consistent with or supported by his treatment notes, observations, examinations, testing, or other medically acceptable clinical or laboratory techniques, despite having an established relationship with the Plaintiff. The record is simply void of any meaningful treatment during the relevant time period, as well as immediately before or thereafter, to provide any insight into how Dr. McMillian reached any of the limitations he assessed. The ALJ need not credit such speculative or conclusory opinions. See Hernandez v. Comm'r of Soc. Sec., No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (explaining that the Sixth Circuit has "previously declined to give significant weight to rudimentary indications that lack an accompanying explanation" such as

26

"check-box" forms that are not accompanied by sufficient explanation); <u>Keeton v. Comm'r of Soc. Sec.</u>, 583 F. App'x 515, 525 (6th Cir. 2014) ("[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion") (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996)); <u>see also</u> <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Therefore, the Court finds that the ALJ's seventh reason cited by the ALJ constitutes good reason.

Accordingly, the Court finds that the ALJ did not err in assigning Dr. McMillian's opinions little weight.


## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[5] that the Plaintiff's Motion for Summary Judgment [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985). The District Court need not provide <i>de novo</i> review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).